122 F.3d 1237
 38 Collier Bankr.Cas.2d 857, Bankr. L. Rep. P 77,475,
97 Cal. Daily Op. Serv. 6592,
97 Daily Journal D.A.R. 10,735
In re Beatrice Rebecca LAWSON, Debtor.
Carl HUGHES, Plaintiff-Appellee,
v.
Beatrice Rebecca LAWSON, Defendant-Appellant.
 No. 96-55517.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 8, 1997.
Decided Aug. 19, 1997.
 
 Geraldine Green (argued) and Pierpont M. Laidley (briefs), Los Angeles, CA, for defendant-appellant.
 Steven Angarella (argued) and Patrick G. Vastano (briefs), Vastano & Angarella, Los Angeles, CA, for plaintiff-appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel; Volinn, Hagan, and McKeag, Bankruptcy Judges, Presiding. BAP No. CC-95-01774-VhM.
 Before: BROWNING, BRUNETTI, and TROTT, Circuit Judges.
 TROTT, Circuit Judge:
 
 OVERVIEW
 
 1
 Chapter 7 debtor Beatrice Rebecca Lawson ("Lawson"), an attorney, appeals the Bankruptcy Appellate Panel's affirmance of the bankruptcy court's order denying Lawson a discharge in bankruptcy. Pursuant to 11 U.S.C. § 727(a)(2)(A), judgment creditor Carl Hughes, who had obtained a $420,000 judgment against Lawson in a state-court malpractice action, objected to a discharge. On the day of the state-court verdict, Lawson recorded a deed of trust against her residence in favor of her mother and subsequently secured a loan against the residence by subordinating her mother's deed of trust. Lawson contends that the bankruptcy court clearly erred in finding that the transfer of real property to her mother was part of a scheme to conceal property from creditors. We have jurisdiction under 28 U.S.C. § 158(a), and we affirm.
 
 BACKGROUND
 
 2
 In 1990, Lawson represented Hughes in a personal injury lawsuit for damages arising out of an industrial accident.[1] Hughes's lawsuit was dismissed, and he sued Lawson for malpractice. On January 7, 1991, a jury awarded Hughes a judgment of $750,000.[2] Also on January 7, Lawson recorded a $350,000 deed of trust in favor of her mother on her personal residence (the "Edgemar residence"). At the time of this transaction, the Edgemar residence was worth $300,000 and was encumbered with a deed of trust in favor of Great Western Savings & Loan to secure a loan balance of some $58,000. Thus, equity of only approximately $242,000 supported the $350,000 deed of trust.
 
 
 3
 On January 8, 1991, one day after Hughes's verdict, Lawson and her brother (who represents her in this appeal) each recorded a quit-claim deed of their interests in a second parcel of real property (the "Gramercy property"). Hughes attacked both transfers in his objection to discharge and proceeded in state court to void both. The bankruptcy court expressly excluded consideration of this second transfer when ruling on the debtor's discharge.
 
 
 4
 Sometime between January and April of 1991, Lawson borrowed $175,000 from the Elsam Company, a private lender, granting Elsam a third deed of trust on the Edgemar residence. Lawson's mother subordinated her deed of trust to Elsam's; thus, the subordinated deed of trust was secured only by approximately $67,000 of equity in the property.
 
 
 5
 On July 9, 1992, more than one year after these events, Lawson filed a chapter 7 petition. Hughes objected to Lawson's discharge. After a bench trial, the bankruptcy court denied Lawson's discharge. The court ruled that the transfer of the deed of trust constituted a continuing concealment of the debtor's property from her creditors. Lawson appealed to the BAP.
 
 
 6
 The BAP remanded the matter in order for the bankruptcy court to clarify its finding regarding Lawson's concealment. On remand, the bankruptcy court reaffirmed its prior ruling. The bankruptcy court focused on Lawson's loan from Elsam and the subordination of her mother's deed of trust as evidence that the transfer was a sham, with Lawson retaining a secret benefit-use and control of the property. The bankruptcy court's memorandum states:
 
 
 7
 But it is her mother's subordination that gives proof to our conclusion that Ms. Lawson's transfer to her mother was a continuing concealment of Ms. Lawson's true interest in the residence. Ms. Lawson derived an equitable benefit by being able to use her residence for collateral for a new loan, free and clear of her mother's supposed interest in the residence, the grant of which interest had overencumbered the property. This is sufficient under the preponderance of evidence to establish a continuing concealment. Where a plaintiff can prove that a debtor retained control over property to the extent that she was able to use it as collateral by having family members subordinate supposedly valid and enforceable interests, it is appropriate to deny the debtor a discharge under the theory of continuing concealment.
 
 
 8
 The BAP affirmed the bankruptcy court's findings, concluding that they were not clearly erroneous. Specifically, the BAP stated that Lawson's "subordination of her mother's deed of trust in favor of Elsam allowed an inference to be made that the debtor retained a secret benefit in the residual equity in the property purportedly encumbered by the deed of trust which constituted a continuing concealment of assets." Lawson, 193 B.R. at 524. Lawson appealed.
 
 STANDARD OF REVIEW
 
 9
 Decisions of the Bankruptcy Appellate Panel are reviewed de novo. In re Alsberg, 68 F.3d 312, 314 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996). The panel independently reviews the bankruptcy court's rulings on appeal from the BAP. In re Roosevelt, 87 F.3d 311, 313 (9th Cir.1996). The panel reviews the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. Alsberg, 68 F.3d at 314. When a bankruptcy court denies a debtor's discharge, a finding that the debtor acted with the intent to hinder, delay or defraud his creditors is reviewed for clear error. In re Adeeb, 787 F.2d 1339, 1342 (9th Cir.1986).
 
 DISCUSSION
 
 10
 Lawson contends that the bankruptcy court clearly erred in finding that she concealed assets within one year before the date of filing the petition for relief with the intent to defraud, hinder, or delay a creditor. We disagree.
 
 
 11
 Section 727 of the United States Bankruptcy Code directs courts to grant a debtor a discharge unless
 
 
 12
 (2) the debtor, with intent to hinder, delay, or defraud a creditor ... has ... concealed--
 
 
 13
 (A) property of the debtor, within one year before the date of the filing of the petition.
 
 
 14
 11 U.S.C. § 727(a)(2)(A). Thus, two elements comprise an objection to discharge under § 727(a)(2)(A): 1) a disposition of property, such as transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property. Both elements must take place within the one-year pre-filing period; acts and intentions occurring prior to this period will be forgiven. See Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir.1993).
 
 
 15
 Granting of security for a debt is a transfer under the Bankruptcy Code. See 11 U.S.C. § 101(54) (transfer includes every mode of disposition of property or an interest in property). Thus, Lawson's grant of a deed of trust on the Edgemar residence to her mother constitutes a transfer of property for the purposes of section 727(a)(2). The parties do not dispute that the transfer at issue took place and also agree it was recorded more than one year prior to the filing of the petition.
 
 
 16
 Pursuant to the one-year time limitation in section 727(a)(2)(A), the deed of trust could not serve alone as a basis for denying Lawson's discharge. The bankruptcy court accepted that Lawson's mother was a creditor and that the deed of trust, although preferential, was not necessarily a fraudulent transfer. The question presented in this appeal, however, is whether the transfer could serve as a basis for a concealment of property within the one year prior to filing of the petition.
 
 
 17
 Under the "continuing concealment" doctrine, a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing. See In re Olivier, 819 F.2d 550, 555 (5th Cir.1987) (citing and discussing cases). Our circuit has not yet adopted the doctrine of "continuing concealment," but the Ninth Circuit BAP and the bankruptcy court appropriately applied it in this case.
 
 
 18
 In Olivier, debtor spouses-when faced with liability in a serious personal injury lawsuit-transferred title in their home to the wife's mother and properly recorded the transfer seven years prior to filing their petition. Id. at 551. Debtors continued to live in and maintain the property up to filing their petition. Id. The bankruptcy court found that the debtors retained a secret beneficial interest in the legally-transferred property and therefore that they continued to conceal the property interest from creditors within the year prior to the filing of the petition. Id. at 553. The bankruptcy court reasoned that, where evidence demonstrates that the debtor retained a secret interest that could be realized by her creditors, despite an ostensible transfer of property, such a sham transaction suffices to deny her a discharge. Id. at 555.
 
 
 19
 The logic and rationale behind the "continuing concealment" doctrine as explained in Olivier is compelling; we therefore adopt the doctrine as the law of the Ninth Circuit. See also Rosen, 996 F.2d 1527 (3d Cir.1993) (adopting doctrine of continuing concealment); In re Kauffman, 675 F.2d 127 (7th Cir.1981) (same). This case is virtually indistinguishable from Olivier. In both cases, debtors transferred property to their mothers in order to avoid paying creditors' judgments from state lawsuits. In both cases, the debtors retained an interest in the property. In Olivier, the interest was continuing to live in and maintain the house. In the instant case, the interest is continuing to live in the house and subordinating her mother's deed of trust in order to obtain the $175,000 Elsam loan.
 
 
 20
 Having adopted the doctrine of continuing concealment, we affirm the BAP's application of it in this case. Lawson puts forth no evidence on appeal to give us a definite and firm conviction that the bankruptcy court's findings were erroneous. In fact, we believe the bankruptcy court's and the BAP's findings and conclusions are absolutely correct. Just as Lawson argued before the BAP, she now contends that she granted the deed of trust because of the debt she owed to her mother, which was allegedly of reasonably equivalent value. Lawson's contention "misses the point that a debtor can conceal assets by transferring them to a cooperative creditor so long as the transfer allows the debtor to retain a secret benefit."[3] Lawson, 193 B.R. at 524. As the BAP explained:
 
 
 21
 Evidence was adduced below that allowed the court to infer that the debtor retained and concealed from her creditors a secret benefit in regard to the deed of trust. It is undisputed that at some point after creating the lien, Lawson borrowed money from Elsam, the private lender, and her mother subordinated her deed of trust to Elsam's. Although the debtor could allege that her mother generously and intentionally deferred her own rights in the property in favor of her daughter's interests, the court permissibly could infer that Lawson retained a secret property interest in the property superior to her mother's lien.
 
 
 22
 Id.
 
 
 23
 Lawson also argues that Hughes could have placed a lien on the property immediately after obtaining the state-court judgment, thereby protecting his interest. Lawson's argument, much like her argument before the BAP, ignores the real question at issue in this appeal: "whether she retained control over the residual equity in the property despite the ostensible transfer." Id. The fact that Lawson continually resided at the Edgemar property and was able to withdraw approximately $175,000 in equity from that property defeats Lawson's argument. Even if Hughes recorded a judgment lien in March 1996, the Edgemar property would have been overencumbered when judgment was entered. Nothing Lawson contends on appeal presents even the slightest justification for concluding the bankruptcy court erred in applying the continuing concealment doctrine in this case.
 
 CONCLUSION
 
 24
 We adopt the doctrine of continuing concealment, and we affirm the BAP's decision. Lawson's subordination of her mother's deed of trust in favor of Elsam allowed an inference to be made that she retained a secret benefit in the residual equity of the property. Lawson's actions constituted a continuing concealment of assets and divested Lawson of any rights to a discharge.
 
 
 25
 AFFIRMED.
 
 
 26
 Appellant shall bear Appellee's costs for this appeal.
 
 
 
 [1]
 We take the facts discussed herein from the well-written BAP opinion. See Lawson v. Hughes, 193 B.R. 520 (9th Cir. BAP 1996)
 
 
 [2]
 The judgment amount was reduced to $420,000 on March 26, 1991
 
 
 [3]
 Lawson also contends that, because the proceeds from the Elsam loan was allegedly used to pay off another loan, there was no continuing concealment. We disagree. First, Lawson continued to live in the Edgemar residence, thereby retaining a controlling interest in the property. Second, even under Lawson's theory of the case-that she subordinated the deed of trust because she owed her mother thousands of dollars-Lawson retained a benefit in the Edgemar property by using the Elsam loan to pay off money owed to and by her mother