147 F.3d 1185
 40 Collier Bankr.Cas.2d 684, 32 Bankr.Ct.Dec. 1132,
Bankr. L. Rep. P 77,743,
98 Cal. Daily Op. Serv. 5569,
98 Daily Journal D.A.R. 7787,
2 Cal. Bankr. Ct. Rep. 45
 In re: Brenda F. HINES, Debtor.
Robert L. GORDON, Appellant,
v.
Brenda F. HINES, Appellee.
 No. 96-55735.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1997.
Decided July 16, 1998.
 
 1
 Don E. Bokovoy, Weintraub & Bokovoy, San Diego, California, for appellant.
 
 
 2
 Nathan Shilberg, Harold Shilberg, San Diego, California, for appellee.
 
 
 3
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel; Ashland, Ollason, and Hagan, Judges, Presiding. BAP No. SC-94-1893AsOH.
 
 
 4
 Before: REINHARDT and TASHIMA, Circuit Judges, and SHADUR, District Judge.*
 
 SHADUR, District Judge:
 
 5
 This small-dollars but large-issue litigation poses a problem that pervades each of the many thousands of no-asset or low-asset personal bankruptcies in the federal court system: the legal posture of the attorneys' fees paid or payable by Chapter 7 debtors. Whether the debtor is required by his or her attorney to pay all of the fees up front--even before the filing in bankruptcy--or, as here, enters into a prefiling arrangement for payment of the fees (or a material portion of the fees) after filing, the legal status of the fees attributable to postpetition services does not fit comfortably within the provisions of the Bankruptcy Code.
 
 
 6
 Bankruptcy judges are of course well aware of those problems on a day-to-day basis. But because the question is rarely encountered in an adversarial context, the conceptual difficulties that it presents are commonly swept under the rug. And because the stakes in any individual case tend to be so low in relation to the cost of litigating such a dispute, any such controversy that does arise in adversarial terms rarely finds its way to the district court level--and even more rarely to a Court of Appeals. This case presents a unique exception, because it seems to stem from bad blood between two lawyers competing for the high volume business that personal bankruptcies represent. We are thus required to deal here with the consequences of Congress' delinquency in failing to set out express ground rules to be followed by lawyers--and hence by the courts--on the issue before us.
 
 
 7
 In this instance Robert L. Gordon ("Gordon"), former attorney for Chapter 7 debtor Brenda F. Hines ("Hines"), appeals the reversal by the Ninth Circuit Bankruptcy Appellate Panel ("BAP") of a bankruptcy court order that had denied Hines' motion for contempt against Gordon for willful violation of one of the paragraphs of the automatic stay provision of the Bankruptcy Code ("Code"), 11 U.S.C. § 362(a)(6).[1] Hines' motion was a response to Gordon's postpetition cashing of two postdated personal checks and other actions to collect some previously-agreed-upon attorneys' fees. We have jurisdiction over this appeal under 28 U.S.C. § 158(d). For the reasons stated here, we reverse the BAP decision and remand the case for a limited return to the bankruptcy court.
 
 Standards of Review
 
 8
 We review BAP decisions de novo (Hughes v. Lawson (In re Lawson ), 122 F.3d 1237, 1240 (9th Cir.1997)). We review a bankruptcy court's legal conclusions de novo and its factual findings for clear error (Feder v. Lazar (In re Lazar ), 83 F.3d 306, 308 (9th Cir.1996)). In this case the absence of any factual disputes means that de novo review applies throughout.
 
 Facts[2]
 
 9
 On November 24, 1992 attorney Harold Shilberg ("Shilberg") began a Chapter 13 bankruptcy proceeding on Hines' behalf. Almost exactly a year later Hines changed counsel by retaining Gordon (who had explained to her the apparent advantages of Chapter 7 over Chapter 13 in her situation) to convert her Chapter 13 case to one under Chapter 7. Because Hines could not pay Gordon's $875 fee in advance,[3] they entered into a written fee agreement for payment in seven monthly installments of $125 each, supported by a promissory note and seven postdated checks, the first to be cashed pre-petition and the remainder to be cashed postpetition.
 
 
 10
 On December 29, 1993 Gordon formally replaced Shilberg as Hines' attorney of record. Shortly thereafter, on Gordon's application the bankruptcy court issued an order converting Hines' case from Chapter 13 to Chapter 7. In conjunction with the conversion petition, Gordon properly disclosed his fee arrangement to the bankruptcy court pursuant to Section 329 and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 2016(b). In accordance with the fee agreement and related promissory note, Gordon proceeded to act on Hines' behalf postpetition, and he cashed two postdated checks, one on January 10, 1994 and the other on February 7 of that year (so that Gordon's total receipts for his services rendered aggregated $375).
 
 
 11
 Though the record does not disclose the dynamics that led to her further change of heart, Hines then became dissatisfied with Gordon and decided to revert to her former attorney Shilberg. First Shilberg advised Hines that any attorneys' fees incurred to Gordon before the commencement of Hines' Chapter 7 bankruptcy case were dischargeable. And on Shilberg's advice Hines stopped payment on the remaining uncashed postdated checks in Gordon's hands.
 
 
 12
 In response to that stop payment order, Gordon's law firm sent Hines a "past due" notice asking that she communicate with the firm's accounting department to establish a new payment arrangement. On April 12, 1994 a firm attorney followed up on that notice by leaving a message on Hines' answering machine. Hines returned that call and claims that she was ordered to settle her account by the end of the month.
 
 
 13
 On April 18, 1994 Hines, now represented by Shilberg, filed a motion for contempt against Gordon for willful violation of the Section 362(a)(6) automatic stay, seeking compensatory damages of $250, punitive damages of $50,000[4] and attorneys' fees. On July 14, 1994 the bankruptcy court denied Hines' contempt motion, at the same time reducing Gordon's fee from the originally agreed amount of $875 to the $375 already paid. Hines timely appealed that order to the BAP, which reversed the bankruptcy court's order and remanded for a determination of damages under Section 362(h). Gordon then timely filed a notice of appeal to this Court.
 
 Attorneys' Fees and the Code
 
 14
 Before we turn to the analytical and practical aspects of the problem before us, it is useful to summarize the parties' positions. They agree that Gordon's conversion of Hines' case to one under Chapter 7, an action taken pursuant to Section 1307(a), triggered the operation of Section 362(a)(6). That provision automatically stays "any act to collect, assess, or recover a claim against the debtor that arose before" the filing of the petition.[5] Hines contends that Gordon's presentment of the post-dated checks and delivery of the notice of dishonor constituted an impermissible attempt to collect a prepetition claim against Hines in violation of Section 362(a)(6). In response Gordon presents two principal arguments. First he argues that the postdated checks represent a post-petition claim against Hines and are thus not subject to the automatic stay. Alternatively he contends that he did not violate the automatic stay because his conduct fell within the protective ambit of Section 362(b)(11)'s exception for the presentment of negotiable instruments.
 
 
 15
 In an important sense, limiting the focus of attention to the interplay between Section 362(a)(6)'s automatic stay and the presentment exception cannot provide a total answer here. It must be remembered that Gordon is not seeking to recover fees for his prepetition legal services (he has already collected $375 in fees, which appear to cover all prepetition services plus some postpetition services). As we have recently observed in Hessinger & Assocs. v. U.S. Trustee (In re Biggar), 110 F.3d 685, 688 (9th Cir.1997):
 
 
 16
 Thus we hold that the debts at issue in this case--debts arising from the provision of pre-petition legal services--are dischargeable in a bankruptcy proceeding [under Section 727].[6]
 
 
 17
 And any attempt to collect unpaid fees for such prepetition services would be an "act to collect ... a claim against the debtor that arose before" the petition was filed, and hence would violate Section 362(a)(6)'s automatic stay.
 
 
 18
 Although the fee agreement between Hines and Gordon did not contain an allocation of expenses in that regard, the $875 figure expressly covered not only Gordon's initial work in preparing and filing the petition but also all of the work to be entailed in handling the bankruptcy proceedings thereafter. So the scenario before us presents a different question: whether the postpetition rendition of legal services bargained for pursuant to a prefiling fee agreement entitles Gordon to recover the fees for those later services, not from the bankruptcy estate (which in a no-asset case would amount to tapping an empty barrel) but directly from Hines herself.
 
 
 19
 As we have said at the outset, Congress has been delinquent in failing to deal expressly with the always-present problem of arranging in advance for the payment of services to be rendered after the filing in bankruptcy.[7] In the absence of any express statutory treatment of attorneys' fees for postpetition services, Chapter 7 debtors' attorneys have normally resorted to working under one of two fee arrangements, both of which are potentially subject to disruption by the operation of the Code.
 
 
 20
 Under the first approach, the attorney receives full payment from the Chapter 7 debtor, in advance of the bankruptcy filing, for all of the work anticipated to be required in the case. As a legal matter that prepaid right to future legal services--because it exists at the outset of the bankruptcy case--becomes property of the debtor's estate, for subject to a few enumerated exceptions (none of which applies here) Section 541(a) provides that estate property includes "all legal or equitable interests of the debtor" in property, wherever located and by whomever held, as of the time the bankruptcy petition is filed. That statutory language reflects Congress' intent to define estate property in the broadest possible sense (see United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). Accordingly the right to legal services constitutes property of the debtor's estate, which under the literal language of the Code ought to be liquidated to satisfy creditors' claims against the estate.
 
 
 21
 Section 704(1) directs a Chapter 7 trustee to "collect and reduce to money the property of the estate ... and close such estate as expeditiously as is compatible with the best interests of parties in interest." There is no requirement that in acting pursuant to that statutory directive the trustee must obtain court approval before reducing the estate property to cash. Thus the trustee can liquidate the debtor's right to legal services by rejecting the contract with the attorney and demanding a refund of the unearned fees (there are a host of cases that hold that the right to the unearned fees--or the right to the services to be provided by the attorney in consideration of such fees--as of the date of filing in bankruptcy becomes property of the estate as a matter of bankruptcy law; see, e.g., such cases as Indian Motorcycle Assocs. III Ltd. Partnership v. Massachusetts Housing Fin. Agency, 66 F.3d 1246, 1255 (1st Cir.1995); Arens v. Boughton (In re Prudhomme ), 43 F.3d 1000, 1004 (5th Cir.1995); In re Sheridan, 215 B.R. 144, 146-47 (Bankr.N.D.Ill.1996); SEC v. Towers Fin. Corp., No. 93 Civ. 0744(WK), 1993 WL 276935, at * 5 n. 4 (S.D.N.Y. July 21, 1993) and cases cited there). As we have suggested earlier, that prospect rarely arises as a practical matter in the Chapter 7 personal bankruptcy, but the prospect that a problem may not have to be faced is scarcely a justification for sweeping its solution under the statutory rug.
 
 
 22
 Gordon's type of contract with Hines exemplifies the second sort of fee arrangement, under which the Chapter 7 debtor's attorney receives a minimal advance payment (sometimes as little as the filing fee) plus an agreement that the debtor will pay the attorney for work done in the bankruptcy from the debtor's post-bankruptcy earnings. But this case itself exemplifies the potential problems of recovery posed by that option. What the BAP held here is that such an arrangement gives the attorney a prepetition claim for payment attributable to the services to be rendered later during the case, a claim that is discharged by the debtor's act of filing for Chapter 7 protection.
 
 
 23
 It has been suggested that a Chapter 7 debtor's attorney might avoid the compensation quandary by initially contracting only to provide pre-bankruptcy services and by initially accepting payment only for those prepetition services. Then the attorney could later enter into a separate postpetition agreement to provide any necessary postpetition services. In addition to the patent artificiality of any such arrangement, it faces difficulties because of the ethical obligations that are typically imposed on any lawyer who files a bankruptcy (or any other) case on behalf of a client (see, e.g., Rules of the United States District Courts for the Northern District of California (Rule 11-5(a)), the Central District of California (Rule 2.8.2.1), the Eastern District of California (Rule 83-182(b)) and the Southern District of California (Rule 83.3(g)), all precluding an attorney who has filed an appearance from withdrawing from such representation without leave of court).
 
 
 24
 Postfiling reaffirmation by the debtor himself or herself (not by the trustee on behalf of the estate) represents another approach by which the lawyer might obtain payment. As In re Duke, 79 F.3d 43, 44 (7th Cir.1996) has explained:
 
 
 25
 A reaffirmation agreement is one in which the debtor agrees to repay all or part of a dischargeable debt after a bankruptcy petition has been filed.
 
 
 26
 Section 524(c) strictly regulates the debtor's ability to reaffirm an otherwise discharged debt. Duke, id. went on to say:
 
 
 27
 The debtor choice to reaffirm creates a voluntary exception to the "fresh start" that bankruptcy otherwise confers. For that reason, the Bankruptcy Code contains various safeguards designed to assure that reaffirmations are genuine and that they are not the product of abusive creditor practices.
 
 
 28
 In the lawyer-client situation the reaffirmation alternative is complicated by the requirements of Section 524(c)(3), which include the need to provide an affidavit from the debtor's attorney attesting that (1) the agreement to repay a pre-bankruptcy claim represents a fully informed and voluntary agreement by the debtor, (2) such agreement does not impose an undue hardship on the debtor and (3) the attorney has fully advised the debtor of the legal consequences of the agreement. Where the creditor is the debtor's own attorney, the conflict of interest involved is obvious: How can the lawyer advise the debtor fully and effectively where the lawyer himself or herself is on the other side of the bargaining table from the client? And if ethical or court rules obligate the attorney to continue representation in all events, what incentive exists for a fully informed client to undertake voluntarily a legally enforceable obligation to pay attorneys' fees? Indeed, in that event the fiduciary obligation of the attorney to provide full disclosure would seem to call for recommending against reaffirmation.
 
 
 29
 Nor is the situation helped by viewing the agreement to provide postpetition legal services as an executory contract.[8] Under Section 365 any executory contracts entered into by a debtor are subject to assumption or rejection by the trustee in bankruptcy. But that action affects only potential recovery against the bankruptcy estate--a wholly moot issue in a no-asset case, and understandably not an issue in this case. Gordon's interest was and is to look to the debtor herself--not to the estate--for payment.
 
 
 30
 As all of this has shown, regardless of how the fees are handled (whether by payment in advance or by deferred payment) the arrangement potentially runs afoul of one Code provision or another. And because no existing solution is totally satisfactory, it is only the rarity of litigated disputes in this area (as a practical matter) that avoids a real chilling of competent counsel's willingness to represent Chapter 7 debtors. Needless to say, the optimum solution to the problem would call for action by Congress to provide express statutory authority and an express procedure for the compensation of Chapter 7 debtors' attorneys who render postpetition services.
 
 
 31
 But because Congress has failed to correct that oversight in express terms, we are compelled to consider an appropriate judicial response--one that recognizes that the very administration of the bankruptcy system requires that attorneys for Chapter 7 debtors must have a legally enforceable right for their postpetition services that were contracted for before filing of the petition. If the absence of such a right were to become the law, it does not require much thought to recognize that the entire system would suffer a massive breakdown. In our view the required recognition of such a right, essentially a doctrine of necessity, is best implemented by a holding that all claims for lawyers' compensation stemming from such postpetition services actually provided to the debtor really do not fall within the automatic stay provisions of Section 362(a)(6) or the discharge provisions of Section 727. And we follow that path here.
 
 
 32
 There is a possible alternative route that would lead to the same destination. Despite the breadth of the definition of "claim" in Section 101(4)(A), it must be recognized that it strains the notion of a viable "claim against the debtor that arose before " the filing of the Chapter 7 petition (Section 362(a)(6), emphasis added) to attach that label to a lawyer's ability--though agreed upon prepetition--to receive payment of a contracted-for fee only if and when the lawyer performs the postpetition services that create the entitlement to that fee.
 
 
 33
 As the Supreme Court has described the "claim" concept in Pennsylvania Dep't. Pub. Welfare v. Davenport, 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), after having given (id. at 558, 110 S.Ct. 2126) special emphasis to the "right to payment" as the key language in the statutory definition of "claim":
 
 
 34
 The plain meaning of a "right to payment" is nothing more nor less than an enforceable obligation....
 
 
 35
 In the situation with which we are dealing, where the only way in which "an enforceable obligation"--a "right to payment"--can arise is if the attorney actually renders the postpetition legal services that match up to the debtor's prepetition promise to pay, it strains that statutory language a good deal to characterize the attorney as having violated the Section 362(a)(6) automatic stay by seeking payment once the postpetition services have thereafter been performed.[9] And in that sense Gordon's efforts to collect the fees at issue would not appear to have violated the Section 362(a)(6) automatic stay.
 
 
 36
 In sum, we determine that as of the time that Hines fired Gordon to return to Shilberg as her attorney, Gordon did have an undischarged claim for any fees earned by him in excess of the $375 that he had already collected via the first three $125 checks. To quantify that claim, Gordon could not look to the entire remaining $500 that was originally contracted for, because Hines (like any client) had the right to discharge him before he had completed his services. Rather he had to look to reasonable compensation under a quantum meruit theory of recovery. As Carolco Television Inc. v. NBC (In re De Laurentiis Entertainment Group Inc.), 963 F.2d 1269, 1272 (9th Cir.1992) teaches:
 
 
 37
 Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant.
 
 
 38
 Carolco, id. at 1273 further observed that "[c]ompensation must be 'expected' [by the party rendering services] only in the sense that the services rendered must not have been intended to be gratuitous." And of course that aptly describes Gordon's rendition of postpetition services for Hines' benefit.
 
 
 39
 In light of the unsettled state of the law in this area when Gordon acted, and particularly in view of the potential alternative analysis described earlier, we uphold the bankruptcy court's determination rather than that of the BAP as to the nonviolation of the automatic stay. And a fortiori we uphold the bankruptcy court's denial of Hines' motion that Gordon be held in contempt for willful violation of the statutory stay (even giving "willful" the narrow no-specific-intent reading set out in Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir.1992)).
 
 
 40
 Only one issue may perhaps remain open. As stated earlier, part of the bankruptcy court's decision was to reduce Gordon's fee to the $375 that he had already collected. It is unclear from the record whether that represented the court's determination that the reduced amount constituted reasonable compensation for the services (both prepetition and postpetition) for the work actually performed by Gordon. That question needs an answer from the bankruptcy court.
 
 
 41
 We therefore REVERSE the BAP decision in its entirety and order the BAP to REMAND the matter for a limited return to the bankruptcy court for a determination consistent with this opinion.
 
 
 42
 TASHIMA, Circuit Judge, concurring in the judgment:
 
 
 43
 Although I agree with the result the majority reaches, I do not agree with the "legislative" route it takes in reaching its conclusion. "[B]ecause Congress has failed to correct [an] oversight," the majority steps into that breach and fashions its own solution in order to avoid "a massive breakdown" of "the entire system." I would have thought that such efforts were the job of Congress. I therefore concur in the judgment only.
 
 
 44
 The bankruptcy courts have dealt with the payment of postpetition legal fees in Chapter 7 cases for decades. Today, however, we are told that "the conceptual difficulties that it presents are commonly swept under the rug." The majority castigates Congress for being "delinquent in failing to deal expressly with the always-present problem of arranging for the payment of services to be rendered after the filing in bankruptcy." The majority then undertakes the heavy burden of rewriting the Bankruptcy Code to come up with best solution from its own public policy perspective.
 
 
 45
 The answer the majority comes up with is that there must be a judicially implied exception to 11 U.S.C. §§ 362(a)(6) and 727 for legal fees for postpetition services.[1] The majority reaches this conclusion in spite of this circuit's binding precedent that the only exceptions to § 727's discharge are listed in 11 U.S.C. § 523, and that courts are powerless to create new ones. Hessinger and Assoc. v. U.S. Trustee (In re Biggar), 110 F.3d 685, 687-88 (9th Cir.1997).
 
 
 46
 What is so strange about today's opinion is that this judicial legislating is unnecessary. Indeed, immediately after the majority announces its judicially created exception to §§ 362(a)(6) and 727, it concedes that "[t]here is a possible alternative that could lead to the same destination." Section 727 permits the discharge only of claims against the estate, and § 362(a)(6) stays efforts to collect only on claims against the estate. As the majority acknowledges, a prepetition contract for postpetition legal services does not give the attorney a claim against the estate. Under 11 U.S.C. § 101(5)(A), a "claim" includes any contingent right to payment, but it is a plausible reading of that section that the contingency referred to cannot be one party's decision to perform on the contract. Thus, the attorney in this case accrued a "claim" only when he actually provided the postpetition services for which the debtor agreed to pay him; therefore, his "claim" is not a prepetition claim against the estate but a postpetition claim against the debtor herself. Accordingly, it is entirely unnecessary to manufacture an exception to §§ 362(a)(6) and 727 because those sections are not even implicated. I regret the majority's ignoring the admonition in In re Biggar, 110 F.3d at 688, that "[i]f an exception is to be made, therefore, it should be crafted by Congress." I can only hope that this is not the start down the path of our legislating further exceptions.
 
 
 47
 Thus, I concur only in the court's ultimate holding that the BAP's finding that Gordon willfully violated the automatic stay must be reversed. Gordon's attempt to collect beyond the $375 he had already received was an attempt to collect on a debt earned for his postpetition services. The automatic stay simply does not apply to this postpetition claim. I also agree that there must be a limited remand to determine what portion of the remaining $500 (i.e., the $875 collected prepetition, minus the $375) Gordon is entitled to as compensation from Hines for his postpetition services.
 
 
 48
 Accordingly, I concur in the judgment.
 
 
 
 *
 The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 All further references to Code provisions will simply take the form "Section--."
 
 
 [2]
 This undisputed factual statement is drawn from the parties' briefs and the BAP opinion reported at 198 B.R. 769 (9th Cir.BAP 1996)
 
 
 [3]
 One advantage of the conversion pointed out by Gordon was that Hines would recapture most of the fees that she had paid earlier, so that not all of the $875 payable to Gordon represented an incremental cost
 
 
 [4]
 Although it does not affect our resolution of the case, that extraordinary prayer for relief clearly reflects a level of vindictiveness that bespeaks the lawyer v. lawyer aspect of the controversy. Apparently Gordon is one of the coterie of lawyers who advertises in the media for personal bankruptcy business, with the ability of the debtor to pay fees in installments being part of his sales pitch. That "pay me later" representation seems to give him a competitive edge over lawyers such as Shilberg, who also seek to corral the same clientele--but without offering credit terms to their prospective clients
 
 
 [5]
 Section 348(a) provides that in general a conversion does not change the date of the filing or of the order of relief (so that Gordon's fee agreement would be a postpetition obligation and hence not subject to Section 362(a)(6)). But Section 348(d) changes that result by providing that claims against the debtor that arise after the order for relief but before conversion in a case converted under Section 1307 "shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." Thus the fee agreement was transformed into a prepetition obligation of the debtor after all and, but for the rule that we announce here, would be subject to the automatic stay under Section 362(a)(6) and to discharge under Section 727
 
 
 [6]
 Any suggestion in the concurrence that this opinion is somewhat at odds with Hessinger is mistaken. As Hessinger, id. has correctly announced, courts are of course powerless to create non-statutory exceptions to a bankrupt's discharge--but that is not at all the issue here. To the contrary, as is made plain in the course of discussion here, the question is whether an individual's agreement to pay for post-petition services (something that is not an existing pre-petition debt at the time of discharge) is enforceable post-discharge
 
 
 [7]
 Regrettably the recently-issued extensive report of the National Bankruptcy Review Commission did not address the subject either
 
 
 [8]
 In the situation before us, Gordon's agreement to provide legal services was certainly in part an executed (that is, it was a partly-performed) contract. One issue that has not been resolved (except by implication from the bankruptcy court's reduction of Gordon's total fee to $375) is the precise allocation of the agreed-upon $875 fee between the executed and executory aspects of Gordon's undertaking
 
 
 [9]
 We recognize of course that the Section 101(4)(A) characterization of "claim" follows its definition as consisting of a "right to payment" with the language "whether or not such right is ...," followed in turn by a number of modifiers including "contingent." But it strikes us that something that constitutes the very essence of the right to payment--such as the performance of services without which the promise to pay fails for a total want of consideration--presents an element of total contingency that is different in kind rather than degree from the type that is contemplated by the statute
 
 
 [1]
 Although the majority carefully eschews use of the word "exception," its holding that such fees "really do not fall within" the provisions of §§ 362(a)(6) and 727, does, in fact, carve out an exception