**In re William TREDINNICK and Sandra Tredinnick, Debtors.**

**Kevin H. Knutson, Appellant,**

**v.**

**William Tredinnick and Sandra Tredinnick, Appellees.**

BAP No. EC–00–1560–RRyMo.
Bankruptcy No. 96–26066–B–7.
Adversary No. 99–2734.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 24, 2001.

Decided July 12, 2001.

Kevin H. Knutson, Sacramento, CA, pro se.

Danny H. Williams, Sacramento, CA, for appellees.

Before: RUSSELL, RYAN, and MONTALI, Bankruptcy Judges.

### OPINION

RUSSELL, Bankruptcy Judge.

574

One month before filing their chapter 7 [1] petition, the appellees entered into an oral agreement for legal services with the appellant, a paralegal awaiting bar results. Subsequent to the petition, the appellant prepared several documents on their behalf for which he billed them. The appellees received their discharge, having not paid their debt to him. After the case was closed, the appellant sued them in state court for breach of contract. The appellees then had the case reopened in order to schedule the debt. They also initiated an adversary proceeding by which they sought to have the debt discharged because it arose out of a prepetition agreement. The bankruptcy court ruled in their favor. This appeal followed. We REVERSE.

## I. FACTS

In April 1996, appellees William and Sandra Tredinnick entered into an oral agreement with appellant Kevin Knutson under which Knutson was to prepare documents for them in connection with their upcoming bankruptcy. At the time of the agreement, Knutson was a paralegal awaiting California bar examination results. According to the Tredinnicks, the arrangement was a "barter" whereby Mr. Tredinnick, a former attorney, would give his drunk-driving defense clinic to Knutson (after he passed the bar examination) in exchange for Knutson's services. According to Knutson, however, he was to be paid the reasonable value of his services.

Approximately one month after the agreement, the Tredinnicks filed their chapter 7 petition *in propria persona*. Subsequently, from June 1996 through August 1997, when the Tredinnicks received their discharge, Knutson prepared numer-

ous documents for the couple. Most of these involved the defense of unlawful detainer actions that were filed against the Tredinnicks after the respective creditors had obtained relief from the automatic stay. Over a series of invoices dated January 1997, March 1997, and April 1998, Knutson billed the Tredinnicks $5,034.90, which remained unpaid.

In January 1999, the Tredinnicks' case was closed. In a "sixth invoice" dated January 13, 1999, Knutson wrote the following to the couple:

> I recently learned that your Chapter 7 Bankruptcy case closed on January 4, 1999. It was our agreement that you would pay your bill in full once the Bankruptcy case was closed. Since your Bankruptcy case has closed I will expect payment from you in the immediate future.
>
> If I do not receive a payment on your account within two weeks from the date of this billing I will be seeking legal action to recover my earnings for the services I provided .... I do not want to pursue this course of action but you will leave me no choice since you have not responded to my repeated billing statements and telephone calls.

Sixth Invoice, Jan. 13, 1999.

Knutson received no remittance and, true to his word, sued the Tredinnicks in state court for breach of contract. The Tredinnicks answered Knutson's form complaint, denying its substantive allegations. Before the trial was set to begin, however, they moved to reopen their case for the purpose of scheduling the obligation to Knutson as an unsecured debt. The bankruptcy court granted the motion and an order reopening the case was en-

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

tered in May 1999. Knutson unsuccessfully sought to have this order set aside.

In December 1999, the Tredinnicks filed a complaint by which they sought a determination of dischargeability for the now-scheduled debt to Knutson. Their main substantive allegation was that the debt was subject to discharge because it arose out of a prepetition oral agreement. Knutson answered the complaint, denying this allegation and asserting various affirmative defenses. In one of these, he maintained that the Tredinnicks' debt to him arose postpetition and was thus nondischargeable. Knutson also presented a counterclaim in which he prayed for an order of nondischargeability.

A trial was held in September 1999 at which both Mr. Tredinnick and Knutson testified. The court took the matter under submission and later issued a memorandum decision. In this decision, the court noted that the only issue was whether the debt in question was a prepetition obligation subject to the discharge or a postpetition one not covered by the discharge. Applying the Code's "encompassing" definitions of "debt" and "claim," it concluded the former, emphasizing that the oral agreement regarding Knutson's services was reached one month before the Tredinnicks' chapter 7 petition.[2]

Judgment in accordance with the memorandum decision was entered and Knutson timely appealed.

## II. ISSUE

Whether the bankruptcy court properly determined that the debt owed to Knutson was a prepetition one subject to discharge.

## III. STANDARD OF REVIEW

■ This appeal presents a question of law. We review such questions under the *de novo* standard. *In re Black*, 222 B.R. 896, 899 (9th Cir. BAP 1998) (citing *In re Kirsh*, 973 F.2d 1454, 1456 (9th Cir.1992)).

## IV. DISCUSSION

Highlighting the postpetition nature of his services performed for the Tredinnicks, Knutson argues that their debt to him was a postpetition one not subject to discharge. We agree.

■ Under § 101(12), "debt" means liability on a claim. Section 101(5) defines "claim" as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

We have noted that "[b]y providing for the 'broadest definition of claim' Congress intended to ensure that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'" *In re Hassanally*, 208 B.R. 46, 50 (9th Cir. BAP 1997) (citations omitted).

■ The broad definition of a claim, however, is not boundless. 2 COLLIER ON BANKRUPTCY ¶ 101.05[1] (Lawrence P. King et al. eds., 15th ed. rev.2000). A key phrase in § 101(5)(A) is "right to payment"

2. The court was silent on the issue of whether the parties' agreement was a barter or fee-for-service type. This issue was not dispositive to its decision, as well as ours, and in any event, is one to be decided by the state court when appropriate.

and here, Knutson's right, strictly speaking, arose postpetition, given that all the legal services performed by Knutson for the Tredinnicks occurred subsequent to their petition.[3]

The oral agreement for delivery of paralegal services, at the very least, was an executory contract between Knutson and the Tredinnicks, subject to assumption or rejection by the chapter 7 trustee under § 365(a). Since the trustee did not assume that contract, it was automatically rejected sixty days after the Tredinnicks filed their voluntary petition. *See* § 365(d)(1). Any claim arising from that rejection would be determined and allowed as though it had arisen as of the petition date. *See* § 502(g).[4] Thus, all rights of the Tredinnicks to obtain services from Knutson under the oral agreement disappeared upon rejection, and the rights of the Tredinnicks to obtain services from Knutson, and Knutson's corresponding right to be paid for any such services, are not governed by the rejected prepetition oral agreement.

Although not cited by either of the parties, *In re Hines,* 147 F.3d 1185 (9th Cir. 1998), involved a similar situation as this appeal. In *Hines,* a debtor whose case was converted from chapter 13 to chapter 7 filed a motion for contempt against her prior bankruptcy attorney, alleging a willful violation of § 362 for attempting to collect his fees from her postpetition. At the time the debtor retained the attorney, she had already been in a chapter 13 case.

She hired the attorney to convert the case to chapter 7. Because she could not pay his $875 fee in advance, they entered into a written fee agreement for payment in seven monthly installments of $125 each, supported by a promissory note and seven postdated checks, the first to be cashed prepetition and the remainder to be cashed postpetition.

Shortly thereafter, the case was converted. The attorney properly disclosed his fee arrangement to the bankruptcy court pursuant to § 329 and Rule 2016(b). In accordance with the fee agreement and related promissory note, he proceeded to act on the debtor's behalf postpetition and cashed two postdated checks. At this point, the debtor apparently became dissatisfied with the attorney and stopped payment on the remaining uncashed postdated checks.

The bankruptcy court denied the debtor's contempt motion. We reversed and remanded for a determination of damages under § 362(h). The Ninth Circuit reversed, holding that the attorney's attempt to collect fees which he had earned under the prepetition employment agreement, as a result of legal services provided postpetition, did not violate the automatic stay. The majority in *Hines* noted the failure of the Bankruptcy Code to deal satisfactorily with the situation and therefore created a special rule for attorneys as follows:

> But because Congress has failed to correct that oversight in express terms,

---

**3.** Knutson alleges that he prepared over sixty legal documents for the Tredinnicks.

**4.** In *In re Hines,* 147 F.3d 1185 (9th Cir. 1998), discussed *infra,* the court examined an agreement to provide postpetition legal services as an executory contract:

> Nor is the situation helped by viewing the agreement to provide postpetition legal services as an executory contract. Under Section 365 any executory contracts entered

into by a debtor are subject to assumption or rejection by the trustee in bankruptcy. But that action affects only potential recovery against the bankruptcy *estate*-a wholly moot issue in a no-asset case, and understandably not an issue in this case. Gordon's interest was and is to look to the debtor herself-not to the estate-for payment. *Hines,* 147 F.3d at 1190 (emphasis in original; internal footnote omitted).

we are compelled to consider an appropriate judicial response-one that recognizes that the very administration of the bankruptcy system requires that attorneys for Chapter 7 debtors must have a legally enforceable right for their postpetition services that were contracted for before filing of the petition. If the absence of such a right were to become the law, it does not require much thought to recognize that the entire system would suffer a massive breakdown. In our view the required recognition of such a right, essentially a doctrine of necessity, is best implemented by a holding that all claims for lawyers' compensation stemming from such postpetition services actually provided to the debtor really do not fall within the automatic stay provisions of Section 362(a)(6) or the discharge provisions of Section 727. And we follow that path here.

*Hines*, 147 F.3d at 1190–91.

Because we are not dealing with attorneys' fees in the matter before us, *Hines* is not determinative. Nevertheless, we find Judge Tashima's concurring opinion very helpful to a resolution in this appeal. Judge Tashima concluded:

What is so strange about today's opinion is that this judicial legislating is unnecessary. Indeed, immediately after the majority announces its judicially created exception to §§ 362(a)(6) and 727, it concedes that "[t]here is a possible alternative that could lead to the same destination." Section 727 permits the discharge only of claims against the estate, and § 362(a)(6) stays efforts to collect only on claims against the estate. As the majority acknowledges, a prepetition contract for postpetition legal services

does not give the attorney a claim against the estate. Under 11 U.S.C. § 101(5)(A), a "claim" includes any contingent right to payment, but it is a plausible reading of that section that the contingency referred to cannot be one party's decision to perform on the contract. Thus, the attorney in this case accrued a "claim" only when he actually provided the postpetition services for which the debtor agreed to pay him; therefore, his "claim" is not a prepetition claim against the estate but a postpetition claim against the debtor herself. Accordingly, it is entirely unnecessary to manufacture an exception to §§ 362(a)(6) and 727 because those sections are not even implicated. I regret the majority's ignoring the admonition in *In re Biggar*, 110 F.3d at 688, that "[i]f an exception is to be made, therefore, it should be crafted by Congress." I can only hope that this is not the start down the path of our legislating further exceptions.

*Id.* at 1192.

More recently, the Ninth Circuit has reiterated its views on the nondischargeability of postpetition legal services rendered in connection with a bankruptcy in *In re Sanchez*, 241 F.3d 1148 (9th Cir. 2001). There, the court remarked: "There is no question after *Hines* that a reasonable fee for post-petition services is not a dischargeable debt and may be collected in the course of the bankruptcy without violating the automatic stay." *Sanchez*, 241 F.3d at 1150–51.[5]

In light of the foregoing, we cannot say that Knutson's right to payment was contingent in nature. Excluded, then, is the possibility that this claim arose prepeti-

---

**5.** *See also In re Jastrem,* 253 F.3d 438 (9th Cir.2001) (attorney not allowed to collect postpetition the fees earned for services rendered prepetition); *In re Biggar,* 110 F.3d 685

(9th Cir.1997) (obligation to pay for prepetition legal services is a debt subject to discharge).

tion, as the court ruled. Therefore, we conclude that the Tredinnicks' debt to Knutson was postpetition and thus nondischargeable.

## V.  CONCLUSION

The bankruptcy court improperly determined that the debt owed to Knutson was a prepetition debt subject to discharge. We REVERSE.