BASON, Bankruptcy Judge,
concurring.
As a matter of nonbankruptcy law I agree with the majority’s interpretation of “reasonable cause” for not timely filing a tax return. The trustee had the burden to prove that the estate exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time.
As a matter of bankruptcy law I agree with the majority that tax penalties are not “costs of preserving the estate” under § 503(b)(1)(A). I also agree that this matter should be remanded to the bankruptcy court for two reasons: first, to decide if the penalties qualify as administrative expenses for any other reasons and, second, to decide how to deal with the penalties if they are not administrative expenses.
I write separately to emphasize the narrowness of the panel’s ruling. Many of the justifications presented by the trustee are, in concept, reasonable cause for not timely filing tax returns, regardless of whether the evidence in this particular case is compelling. In addition, there are numerous issues that we are not deciding today.
(1) The trustee’s justifications
Taxes can be complicated. In a business bankruptcy case it is often prudent to have the assistance of an accountant.
What if there are no funds to pay an accountant? That might not be a sufficient excuse for a taxpayer outside of bankruptcy, but in my view the situation is different for chapter 7 bankruptcy trustees. They have a strong argument that they act with “ordinary business care and prudence” in deferring the filing of tax returns until there are funds with which to prepare those returns. What other course of action would be prudent for chapter 7 trustees?
In this case, the only source of such funds was a contingent claim for a 2006 tax refund in an unknown dollar amount. Attempting to recover that refund was not easy for several reasons.
Apparently it was difficult to retrieve the debtor’s records. It was also difficult to persuade the debtor’s accountants to prepare the 2006 return. Those accountants had not been paid for past work. They had uncertain prospects of ever being paid for future work. The estate es *182 sentially had no funds to pay them, and the trustee’s uncontradicted assertion is that IRS might have denied the hoped-for 2006 refund “for a myriad of reasons.... ” The trustee also describes numerous communications with the accountants in which he attempted to assist or expedite the process.
The trustee could have applied to the IRS for an extension to file the 2006 tax return, but at oral argument we were told that the maximum aggregate extension would be six months. The IRS has not argued that six months would be anywhere near sufficient, and as the trustee points out it took the IRS itself approximately seventeen months to process the 2006 return once it was filed.
The trustee was charged with liquidating a moribund business with missing records. That situation is analogous to some well accepted grounds for not timely filing a return, such as the taxpayer’s death or serious illness, or the destruction by casualty of the taxpayer’s records. United States v. Boyle, 469 U.S. 241, 243 n. 1, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). Therefore, for a time at least, the trustee had good reasons for not filing the 2006 return.
But it is one thing to miss a deadline by a few months and another thing to miss it by approximately thirty-three months, which is what happened in this case. The 2006 return was due in April of 2007 and was not filed until January of 2010.
Even that degree of delay might have satisfied the “ordinary business care and prudence” standard if there were sufficient evidence of the reasons for the delay. But the trustee’s evidence was not necessarily compelling. On this appeal he has not established that the bankruptcy court committed clear error in finding a lack of reasonable cause for a delay of thirty three months.
(2) Some undecided issues
First, we are not asked to allocate blame, nor is it clear that there is any blame. The accountants understandably were reluctant to invest more time on a project for which they might never be paid. The trustee understandably may have been unable to retain alternative accountants or to accelerate the preparation of returns by the existing accountants.
Second, because there were essentially no funds in the estate we are not asked to review the trustee’s choices among competing demands for use of such funds. For example, this case does not involve a choice between preparing tax returns or addressing health and safety issues. We generally defer to the trustee’s business judgment in managing a bankruptcy estate’s limited resources. See Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.), 476 F.3d 665, 669-71 (9th Cir.2007) (defining contours of business judgment rule in bankruptcy context). That issue is not before us, nor do we need to decide how the business judgment test might interact with the “ordinary business care and prudence” standard.
Third, the majority questions (in part V.C. of the opinion) whether the tax penalties may be entitled to administrative expense status for reasons other than what was argued on appeal. I agree with the majority that we should remand rather than simply reverse, and that in explaining why we are remanding it is helpful to offer examples of issues that might need to be considered on remand.
The majority offers two such examples: whether the tax penalties are entitled to an administrative priority under the introductory clause of § 503(b), or alternatively under § 503(b)(1)(C). I agree that those *183 issues may be appropriate for consideration on remand.
Fourth, the majority asks (at the end of part V.C. of the opinion): if the tax penalties are not administrative claims then what are they? The majority then questions whether the tax penalties could be considered prepetition claims.
I do not disagree with providing this example (to clarify why we are remanding). But I part company with the majority when it states that presumably the penalties cannot be general unsecured claims because they did not arise prior to the petition date.
The law is not fully developed on when a claim is treated as postpetition and when it is treated as a contingent, unliquidated prepetition claim (of any priority). Compare, e.g., Centre Ins. Co. v. SNTL Corp. (In re SNTL Corp.), 380 B.R. 204, 220-22 (9th Cir. BAP 2007), aff'd, 571 F.3d 826 (9th Cir.2009) (attorneys’ fees incurred postpetition can be treated as contingent, unliquidated portion of prepetition general unsecured claim), with Gordon v. Hines (In re Hines), 147 F.3d 1185, 1191-92 & n. 9 (9th Cir.1998) (an attorney’s right to payment that arises only on performance of postpetition services is beyond the type of “contingent” prepetition claim contemplated by statute) (alternative holding on which majority and concurrence agree).
It is possible that the tax penalties in this case could be treated as contingent, unliquidated claims as of the petition date (and could be included in an amendment to the IRS claim if its asserted administrative priority were to be rejected). The penalties do have prepetition aspects: they arise from liquidating the prepetition business and the untimely filing of the prepetition 2006 tax return which led to the untimely filing of the 2008 and 2010 informational returns. On the other hand, perhaps the tax penalties are more properly viewed as postpetition claims that are beyond what the statute means by “contingent” and “unliquidated” prepetition claims. In either event, the claims’ priority is unclear.
I express no views on the correct outcome. My point is that although we are explaining our decision to remand by providing examples of potential issues, I do not interpret our discussion of these particular issues as limitations on the bankruptcy court: on remand it can apply its own analysis to whatever issues are properly presented.
(3) Conclusion
With the limited caveats expressed above, I join in the majority’s well reasoned opinion.