FILED

JUN 09 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. AZ-15-1279-KuJaJu |
| ) | |
| CRAIGHTON THOMAS BOATES, ) | Bk. No. 2:14-bk-17115-GBN |
| ) | |
| Debtor. ) | Adv. No. 2:15-ap-00269-GBN |
| _____) | |
| ) | |
| DALE D. ULRICH, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **O P I N I O N** |
| ) | |
| SCHIAN WALKER, P.L.C., ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and submitted on May 20, 2016
at Phoenix, Arizona

Filed – June 9, 2016

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding

Appearances:    Terry A. Dake argued for appellant Dale D. Ulrich, chapter 7 trustee; Mark C. Hudson of Schian Walker, P.L.C. argued for appellee Schian Walker, P.L.C.

Before:  KURTZ, JAIME* and JURY, Bankruptcy Judges.

*Hon. Christopher D. Jaime, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

KURTZ, Bankruptcy Judge:

**INTRODUCTION**

The judgment on appeal disposed of the parties' cross-motions for summary judgment and dismissed the chapter 7[1] trustee Dale D. Ulrich's adversary proceeding against the debtor's counsel Schian Walker, P.L.C. In the adversary proceeding, Ulrich unsuccessfully sought to recover for the benefit of the bankruptcy estate $60,000 the debtor paid prepetition to Schian Walker pursuant to a retainer agreement. Under the express terms of the retainer agreement, the $60,000 was a flat fee the debtor was fully prepaying in exchange for Schian Walker's promise to defend the debtor in an anticipated nondischargeability proceeding. The retainer agreement further specified that the $60,000 flat fee was earned on receipt and that it would be deposited in Schian Walker's business bank account.

Notwithstanding the debtor's prepetition payment in full of the $60,000, both parties to the retainer agreement still had significant and material contractual duties to perform at the time of the bankruptcy filing, so the retainer agreement qualified as an executory contract for purposes of § 365, and the retainer agreement was rejected by operation of law under § 365(d)(1). Because the bankruptcy court, in granting summary judgment, erroneously determined that the retainer agreement was

_____

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

not an executory contract, we must VACATE AND REMAND for further proceedings consistent with our holding regarding the effect of that rejection on the parties' respective rights and liabilities under the retainer agreement and under Arizona law.

On remand, the bankruptcy court will need to address one lingering factual issue. Absent from the summary judgment record was any undisputed fact demonstrating when Ulrich first exercised his power to liquidate the estate's rights under the retainer agreement by notifying Schian Walker that the agreement was terminated. Under binding Ninth Circuit precedent, rejection of the retainer agreement did not terminate the agreement, nor did it divest the estate of the rights and defenses the debtor enjoyed under the agreement at the time of his bankruptcy filing.

Accordingly, we VACATE AND REMAND.

**FACTS**

At the time of the debtor Craighton Thomas Boates' bankruptcy filing, he was a defendant in a state court lawsuit brought against him by Metro Phoenix Bank for negligent misrepresentation and fraud. In the state court lawsuit, the bank sought damages in excess of $3.6 million. When Boates disclosed to the bank his intent to commence a bankruptcy case, the Bank, in turn, expressed its intent to file a nondischargeability adversary proceeding against Boates under § 523.

In anticipation of this adversary proceeding, before filing bankruptcy, Boates entered into an adversary proceeding retainer agreement with Schian Walker. Pursuant to the retainer agreement, Schian Walker promised to defend Boates in the

3

anticipated nondischargeability action in exchange for a flat fee of $60,000. More specifically, the retention agreement provided as follows:

> The Flat Fee will cover the value of all work we will perform through the conclusion of the Adversary Proceeding. The Flat Fee will be paid by you directly to us, and will be deposited in our business account. The Flat Fee is not an advance against any hourly rate, and the Flat Fee will not be billed against an hourly rate. You agree that the Flat Fee becomes the property of our firm upon receipt, and will be deposited into our business account.

Nondischargeability Retention Letter (Nov. 5, 2014) at p. 2.

Several days before he filed his bankruptcy petition, Boates signed the retainer agreement and paid the $60,000 to Schian Walker, and Schian Walker immediately deposited the $60,000 into its general business account.[2]

Boates filed his bankruptcy petition on November 17, 2014, and the bank commenced its nondischargeability adversary proceeding four days later on November 21, 2014. Roughly one month later, in December 2014, Ulrich was appointed as successor chapter 7 trustee.

Several months later, in May 2015, Ulrich filed a complaint against Schian Walker for declaratory relief and for a monetary judgment of $60,000. Ulrich's complaint in large part was founded on Gordon v. Hines(In re Hines), 147 F.3d 1185 (9th Cir. 1998). Ulrich asserted that, based on In re Hines, the adversary

---

[2]There was a separate retainer agreement covering general bankruptcy legal services Schian Walker promised to provide in exchange for a flat fee of $5,000. The bankruptcy retainer agreement was structured similarly to the adversary proceeding retainer agreement. The bankruptcy retainer agreement is not critical to our analysis or resolution of this appeal, but we mention it for background purposes.

4

proceeding retainer agreement was an executory contract, which had been rejected by operation of law under § 365(d)(1). Ulrich further asserted that he was entitled under In re Hines to claim from Schian Walker the full contract value of Schian Walker's legal services – $60,000 – based on the rejection of the retainer agreement and based on his pre-litigation demand that Schian Walker pay him the $60,000. In support of this claim, Ulrich also alleged that Boates' prepaid right to legal services was property of the estate under § 541.

As an alternate basis for recovering the $60,000, Ulrich alleged that the retainer agreement was unenforceable because it violated E.R. 1.5(d)(3) of the Arizona Rules of Professional Conduct.[3] Based on this Ethics Rule, Ulrich claimed that Schian Walker should have but failed to disclose in writing Boates' right to terminate Schian Walker's representation and to seek a refund depending on the actual value of the services Schian

---

[3]This Ethics Rule states:

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

\*      \*      \*

(3) a fee denominated as "earned upon receipt," "nonrefundable" or in similar terms unless the client is simultaneously advised in writing that **the client may nevertheless discharge the lawyer at any time and in that event may be entitled to a refund of all or part of the fee based upon the value of the representation pursuant to paragraph (a).**

(Emphasis added.) In turn, Comment [7] accompanying this Ethics Rule also plays a critical role in our resolution of this appeal, so we quote Comment [7] in full, as **Appendix A** at the end of this decision.

5

Walker provided.

According to Ulrich, under either theory of recovery, any services Schian Walker actually provided postpetition to Boates effectively were irrelevant in calculating the estate's entitlement to a refund of the $60,000 because, from and after the filing of the petition, the right to prepaid legal services belonged to the estate and not to Boates.

Schian Walker filed a motion for summary judgment, and Ulrich filed a cross-motion for summary judgment. In its summary judgment motion, Schian Walker pointed out that, under the terms of the retainer agreement and Arizona law, the $60,000 was not property of the debtor at the time of Boates' bankruptcy filing, so the $60,000 was not estate property under § 541. In addition, Schian Walker asserted that the Boates had substantially completed his required performance under the retainer agreement, so the agreement was not an executory contract covered by § 365. As for the alleged violation of E.R. 1.5(d)(3) of the Arizona Rules of Professional Conduct, Schian Walker admitted the violation but posited that the statute violation did not justify rendering the retainer agreement unenforceable, especially given the undisputed facts demonstrating that Schian Walker gave Boates verbal notice of the rights referenced in Ethics Rule 1.5(d)(3) and that Boates – himself a practicing attorney – already knew and understood these rights.

Ulrich's arguments in his cross-motion for summary judgment mirrored those he made in his complaint.

At the hearing on the cross-motions for summary judgment, the bankruptcy court ruled in favor of Schian Walker and against

6

Ulrich. In so ruling, the bankruptcy court adopted most of the positions Schian Walker had advocated. For instance, the bankruptcy court held that the retainer agreement was not an executory contract because Boates' payment of the $60,000 constituted substantial performance of his obligations under the retainer agreement. The bankruptcy court additionally held that Schian Walker's violation of Ethics Rule 1.5(d)(3) was insufficient, by itself, to render the retainer agreement unenforceable. But the bankruptcy court went beyond Schian Walker's advocated positions. The bankruptcy court ruled that In re Hines was distinguishable because the retainer at issue in In re Hines was not a flat fee advance payment retainer fully prepaid before the bankruptcy was filed. The bankruptcy court acknowledged In re Hines's statements regarding the appropriate treatment in bankruptcy of flat-fee, advance-payment retainers, fully prepaid before the bankruptcy is filed. However, according to the bankruptcy court, these statements were dicta.

On August 14, 2015, the bankruptcy court entered judgment dismissing the adversary proceeding, and Ulrich timely filed a notice of appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court err when it granted summary judgment in favor of Schian Walker and against Ulrich?

///

7

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's summary judgment rulings. Ilko v. Cal. St. Bd. of Equalization (In re Ilko), 651 F.3d 1049, 1052 (9th Cir. 2011). When we review a ruling de novo, we give no deference to the bankruptcy court's decision. Univ. of Washington Med. Ctr. v. Sebelius, 634 F.3d 1029, 1033 (9th Cir. 2011).

In determining whether to uphold the bankruptcy court's summary judgment rulings, we apply the same summary judgment standards as do all other federal courts. Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013). Summary judgment is properly granted when no genuine issues of disputed material fact remain, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Civil Rule 56 (made applicable in adversary proceedings by Rule 7056); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). For purposes of ruling on summary judgment motions, a factual issue is considered material if it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. Id. A factual dispute is considered genuine if there is sufficient evidence to permit a reasonable trier of fact to make a finding in favor of either party. Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001) (citing Anderson, 477 U.S. at 248–49).

## DISCUSSION

Ulrich's arguments on appeal are premised on two distinct

8

contentions: (1) that the adversary proceeding retainer agreement constituted an executory contract; and (2) that, even if the retainer agreement was not an executory contract, the retainer agreement was invalid because Schian Walker violated E.R. 1.5(d)(3) of the Arizona Rules of Professional Conduct. We will address each of these contentions in turn, but we note at the outset that Ulrich has forfeited all other issues on appeal that he might have raised because he did not specifically and distinctly argue them in his opening appeal brief. Christian Legal Soc'y v. Wu, 626 F.3d 483, 487–88 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

**1.   Executory Contract Rejected by Operation of Law**

Ulrich contends on appeal that the retainer agreement was an executory contract. According to Ulrich, because the retainer agreement was an executory contract, he can recover the value of the contract rights prepaid by Boates based on the rejection of the contract under § 365(d)(1). To support this argument, Ulrich relies on In re Hines, which stated: "the trustee can liquidate the debtor's [prepaid] right to legal services by rejecting the contract with the attorney and demanding a refund of the unearned fees." In re Hines, 147 F.3d at 1189.

We do not read this statement quite as broadly as Ulrich does. In re Hines' reference to "rejecting the contract" doubtlessly is meant to invoke § 365(a) and the trustee's power thereunder to assume or reject executory contracts and unexpired leases. As the Supreme Court and the Ninth Circuit Court of Appeals both have recognized, the trustee's power of assumption

9

and rejection under § 365(a) only applies to executory contracts and unexpired leases. See NLRB v. Bildisco & Bildisco, 465 U.S. 513, 521-22 & n.6 (1984); Unsecured Creditors' Comm. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.), 139 F.3d 702, 705-06 (9th Cir. 1998) (en banc). We consider ourselves bound, if possible, to read the statement in In re Hines in a manner consistent with the above-referenced Supreme Court and Ninth Circuit authority, and with the limitation on the scope of § 365(a) set forth on the face of the statute itself.

Thus, the above-referenced statement from In re Hines only should apply here if it has been established that the subject retainer agreement was executory at the time of Boates' bankruptcy filing. We note that this reading of In re Hines does no violence to In re Hines' holding because the fee agreement at issue in In re Hines clearly was executory: at the time of the commencement of Hines' chapter 7 case, Hines and her bankruptcy counsel both owed each other substantial performance of their respective material duties under their fee agreement. In re Hines, 147 F.3d at 1187.

In deciding whether a contract is executory, we apply the following test, commonly known as the Countryman test:

> An executory contract is one on which performance remains due to some extent on both sides. More precisely, a contract is executory if the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.

In re Robert L. Helms Constr. & Dev. Co., Inc., 139 F.3d at 705 (citations and internal quotation marks omitted) (citing Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 MINN. L.

10

REV. 439, 460 (1973)).

In turn, to determine whether a failure to perform by one party would constitute a material breach excusing performance by the other party, we must look to state contract law – in this case Arizona contract law.  See Dunkley v. Rega Props., Ltd. (In re Rega Props., Ltd.), 894 F.2d 1136, 1139 (9th Cir. 1990); Hall v. Perry (In re Cochise College Park, Inc.), 703 F.2d 1339, 1348 n.4 (9th Cir. 1983).

There is no dispute, here, that all of Schian Walker's contractual duties under the retainer agreement were unperformed at the time of Boates' bankruptcy filing.  Consequently, the resolution of the executory contract issue hinges on whether, at the time of the bankruptcy filing, Boates still owed Schian Walker any further contractual duties – unfulfilled duties that would satisfy the applicable executory contract definition.

According to Ulrich, Boates still had promises to perform under the contract.  However, most of these so-called promises to perform do not hold up as contractual duties under close scrutiny.  For instance, Ulrich claims that Boates had a contractual duty to cooperate in his own defense.  We disagree. This was not part of the parties written agreement.  More importantly, even if Boates was obliged to cooperate in his own defense, this was not a bargained-for part of Schian Walker's consideration.  Quite obviously, Schian Walker was not entering into the retainer agreement in order to obtain Boates' cooperation.  Schian Walker was entering into the retainer agreement to obtain money from Boates in exchange for Schian Walker's promise to provide future legal services.  In the

11

parlance of Arizona contract law, Boates' cooperation was not part of Schian Walker's bargained-for consideration; rather, the payment of $60,000 was Schian Walkers' bargained-for consideration, which bound Schian Walker to provide legal services. See generally Turken v. Gordon, 224 P.3d 158, 165 (Ariz. 2010) (defining "consideration" for contract law purposes).

To the extent Boates was obliged to cooperate in his own defense, we do not consider this a contractual duty under the retainer agreement; instead, Boates' cooperation was a mere condition to Schian Walker's performance. Whereas failure of a contractual duty constitutes a breach of contract, failure of a condition does not result in the breach of the contract. See Restatement (Second) of Contracts, § 235 (indicating that only non-performance of contractual duties constitutes a breach); Restatement (Second) of Contracts, Intro. Note accompanying Topic 5 of Chapter 9 (distinguishing between contractual duties and conditions).[4]

On the other hand, Ulrich also has pointed to Boates' obligation to pay out-of-pocket costs Schian Walker incurs in the process of defending Boates, including but not limited to "service of process fees, filing fees, witness fees, travel, expenses of deposition, investigative costs, computer research, copying . . . and other incidental expenses." This obligation

_____

[4]Absent contrary precedent, Arizona courts generally follow the Restatement (Second) of Contracts. See Arizona v. Tohono O'odham Nation, 944 F. Supp. 2d 748, 766 (D. Ariz. 2013), aff'd, 818 F.3d 549 (9th Cir. 2016).

was included in Schian Walker's Billing Policies and Procedures, which were specifically incorporated into the retainer agreement. Schian Walker never attempted to controvert the existence of this obligation, nor did it object to the Billing Policies and Procedures as a summary judgment exhibit.

We hold that Boates' obligation to pay Schian Walker's costs was a material contractual duty that could result in breach and could excuse Schian Walker from further performance. See generally QC Constr. Prods., LLC v. Cohill's Bldg. Specialties, Inc., 423 F. Supp. 2d 1008, 1013-14 (D. Ariz. 2006) (applying Restatement (Second) of Contracts § 237, which provides that a material failure of performance by one contracting party will excuse the other contracting party from further performance of his or her contractual duties); O'Day v. McDonnell Douglas Helicopter Co., 959 P.2d 792, 795 (Ariz. 1998) (same).

We are aware that the Arizona Rules of Professional Responsibility restricted Schian Walker's ability to withdraw as counsel of record. Even so, the Ethics Rules state that the client's substantial nonperformance of an obligation can be grounds for withdrawal. See Ariz. S. Ct. R. 42, E.R. 1.16(b)(5). Indeed, the legislative comments accompanying Ethics Rule 1.16 provide in relevant part that "[a] lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, **such as an agreement concerning fees or court costs** or an agreement limiting the objectives of the representation." See Ariz. S. Ct. R. 42, E.R. 1.16, Cmt. [8] (emphasis added).

Under these circumstances, we conclude that, at the time of

13

Boates' bankruptcy filing, both parties to the retainer agreement had contractual duties that were both material and as-yet unperformed. Based on their respective unperformed duties, the retainer agreement qualified as an executory contract.

**2. Effect of Rejection**

Having determined that the retainer agreement was an executory contract that could be rejected, we next must address the effect of that rejection. In re Hines opined: (1) that, notwithstanding rejection, the debtor's contractual right to legal services continued to be estate property; and (2) the trustee post-rejection could liquidate the value of that right for the benefit of the estate by demanding a refund of fees paid. 147 F.3d at 1189. The bankruptcy court, here, did not address this aspect of In re Hines other than to note that it was dictum.

We agree with the bankruptcy court to a point. This aspect of In re Hines was dictum. In re Hines spoke of two types of attorney services contracts: those that are fully prepaid and those that are not fully prepaid. Id. at 1189.[5] The attorney services contract at issue in In re Hines was not fully prepaid, whereas In re Hines' dictum related to a hypothetical, fully-prepaid attorney services contract. Id.

Regardless, we must approach the Court of Appeals' dicta with both deference and caution. The Court of Appeals has held that its dicta, under certain circumstances, can bind the Court

---

[5]Cf. Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.), 339 B.R. 730, 736 & n.5 (9th Cir. BAP 2006) (generally identifying three different types of retainers: (1) classic retainers, (2) security retainers, and (3) advance payment retainers).

14

of Appeals. Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003); see also United States v. Johnson, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (in 2d majority opinion) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense."). This panel, as an intermediate appellate court subordinate to the Court of Appeals, certainly is no less bound by Ninth Circuit dicta than the Court of Appeals itself is.

That being said, we do not need to decide here the extent to which In re Hines' dictum binds us. Essentially the same relevant principles are articulated in another Court of Appeals decision, in that instance as part of the Court of Appeals' holding. See First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 563 (9th Cir. 2006).

In In re Onecast Media, Inc., the Court of Appeals held that the chapter 7 trustee's rejection under § 365 of a lease did not divest or deprive the bankruptcy estate of its property interest in the claims and defenses available to the debtor under the lease at the time of the bankruptcy filing. Id. This holding is consistent with § 541(a), which automatically and broadly creates a bankruptcy estate consisting of all of the debtor's legal and equitable interests in property. Gladstone v. U.S. Bancorp, 811 F.3d 1133, 1139 (9th Cir. 2016). The holding also is consistent with § 365(g)(1), which specifies that rejection constitutes a **breach** of the contract or lease as of the date of the bankruptcy filing. Importantly, Congress did not specify in § 365(g)(1)

15

that rejection constitutes a termination of the contract, a rescission of the contract or a relinquishment of rights under the contract. See In re Onecast Media, Inc., 439 F.3d at 563. Other Code provisions amply demonstrate that Congress knows how to terminate contracts and leases (§§ 365(h)(1), (i)(1) and (n)(1)(A)) and also knows how to divest the estate of property rights (§ 522(b)(1)) when it wants to do so. But § 365(g)(1) contains no such termination or divestiture.

In light of In re Onecast Media, Inc., the real issue the bankruptcy court, here, needed to resolve was the nature and extent of the Boates' contract rights on the date of the bankruptcy filing if Boates were considered to have breached the contract on that date. In re Onecast Media, Inc., 439 F.3d at 563. As stated there, "[w]hile rejection of a lease [or contract] prevents the debtor from obtaining **future** benefits of the lease (such as ongoing possession of leased premises), it does not rescind the lease [or contract] or defeat any **pending claims or defenses** that the debtor had in regard to that lease [or contract]." Id. (emphasis added).[6]

---

[6]We realize that some Ninth Circuit decisions have held, inconsistent with In re Onecast Media, Inc., that contract rights associated with executory contracts do not become property of the estate unless and until the contract is assumed. See, e.g., Otto Preminger Films, Ltd. v. Qintex Entm't, Inc. (In re Qintex Entm't, Inc.), 950 F.2d 1492, 1495 (9th Cir. 1991); Chbat v. Tleel (In re Tleel), 876 F.2d 769, 770 (9th Cir. 1989). When faced with inconsistent Ninth Circuit decisions, we typically follow the more-recent and better-reasoned Ninth Circuit authority. Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 381 (9th Cir. BAP 2011). In this instance, the more-recent and better-reasoned Ninth Circuit authority is In re Onecast Media,

(continued...)

16

As a matter of Arizona law, Ulrich's retainer agreement rights on the date of the bankruptcy filing necessarily included a right to terminate Schian Walker and a right to a refund of the fees previously prepaid based on the value of services provided before termination. See Ariz. S. Ct. R. 42, E.R. 1.5(d)(3) & Cmt. [7].

However, there is a critical undisputed fact missing from the summary judgment record. Neither party presented evidence demonstrating when Ulrich first exercised his right to terminate Schian Walker. Ulrich effectively has taken the position that he never retained Schian Walker as an estate professional, nor did he obtain bankruptcy court approval under § 327 to retain Schian Walker, so Schian Walker is not entitled to claim any value for any postpetition attorney services it provided to Boates, in light of §§ 327 and 330.

Ulrich's position is based on a false premise. Neither § 327 nor § 330 are applicable. Those statutes ordinarily do not apply to chapter 7 debtor's attorneys. Lamie v. United States Trustee, 540 U.S. 526, 537-39 (2004). Moreover, they also do not apply when the debtor's attorney receives compensation from a source other than estate funds. See id.

The $60,000 Boates paid to Schian Walker before he filed bankruptcy never became estate property. In accordance with the unambiguous terms of the retainer agreement, Schian Walker's $60,000 in fees were earned on receipt and immediately were

---

[6](...continued)
Inc.

17

deposited in Schian Walker's general business account. As a result, the $60,000 immediately became Schian Walker's property. See Ariz. S. Ct. R. 42, E.R. 1.5(d)(3), Cmt. [7]. Those funds never were deposited in Schian Walker's client trust account, as would have been required for funds in which Boates still held an interest. See Ariz. S. Ct. R. 42, E.R. 1.15(c) ("A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.").

For purposes of determining what is property of the estate, debtor's rights in the subject property are determined under applicable state law. See Butner v. United States, 440 U.S. 48, 55 (1979). Under the undisputed terms of the retainer agreement and under the above-referenced Arizona law, the $60,000 was not Boates' property on the date of the bankruptcy filing, so the $60,000 never became property of his bankruptcy estate.[7]

[7]A recent law review article addressed the issue of the bankruptcy treatment of earned on receipt retainers when the applicable non-bankruptcy law is California law. Sarah C. Hays & D. Edward Hays, Good Help Is Hard to Fund: The Problem of Earned Upon Receipt Retainers and Pre-Funded Litigation, 33 CAL. BANKR. J. 421 (2016). In that article, the authors posited that advance payment retainers for legal services, even if designated as earned on receipt, actually are mere security retainers because of the refund right clients retain under California law. Id. at 426, 437-40. We express no opinion as to whether this article correctly interprets California law. Arizona law applies to the appeal currently before this Panel, and Arizona law cannot be reconciled with the law review article's assertion that there is no such thing as a true advance payment, earned on receipt retainer for future legal services. See Ariz. S. Ct. R. 42, E.R. 1.5(d)(3), Cmt. [7]; see also Ariz. S. Ct. R. 42, E.R. 1.15(c). The law review article's assertions also are difficult to reconcile with the statements in In re Hines, 147 F.3d at 1189-

(continued...)

18

Given that the summary judgment record did not demonstrate when Ulrich first gave notice of termination to Schian Walker, there was no way the bankruptcy court correctly could have determined on summary judgment whether Ulrich was entitled to any fee refund based on the value of services provided before termination. See Ariz. S. Ct. R. 42, E.R. 1.5(d)(3) & Cmt. [7]. On remand, the bankruptcy court will need to address this lingering factual issue.[8]

**3.  Enforceability of Agreement Under Arizona Law**

There only is one other issue we need to address.  Ulrich alternately claimed that the retainer agreement was unenforceable under Arizona law because it did not contain an express written provision advising Boates of his right to terminate Schian Walker

---

[7](...continued)
90, regarding the appropriate bankruptcy treatment of fully prepaid contracts for future attorney services.  Nor can they easily be reconciled with this Panel's statements in In re Dick Cepek, Inc., 339 B.R. at 736 & n.5, explaining the difference between security retainers and advance payment retainers.

[8]When this Panel inquired at oral argument regarding evidence of the termination of the retainer agreement, Ulrich only pointed to a single document in the record – an email from his counsel to Schian Walker dated May 7, 2015, stating as follows:

So as to avoid any further confusion or argument, since the trustee's settlement offer has been rejected, the trustee demands hereby that Schian Walker, PLC turn over to the trustee the $60,000.00 that was paid to the firm pre-petition to defend the post-petition 523 litigation by Metro Phoenix Bank.

For purposes of summary judgment, this email, by itself, did not dispositively answer the question of when Ulrich first notified Schian Walker of the termination of the retainer agreement.

19

and his right to a refund of the fees previously paid based on the value of services provided before termination. According to Ulrich, Schian Walker thereby violated E.R. 1.5(d)(3) of the Arizona Rules of Professional Conduct. However, the Ethics Rules do not specify particular consequences for a failure to comply with the written notice requirement set forth in Ethics Rule 1.5(d)(3).

Ulrich claims that, as a consequence of the Ethics Rule violation, the bankruptcy court should have declared the retainer agreement unenforceable. As authority for this proposition, Ulrich cites a single Arizona Court of Appeals Case. Fearnow v. Ridenour, Swenson, Cleere & Evans, P.C., 110 P.3d 357, 359-60 (Ariz. Ct. App. 2005), vacated & remanded on other grounds, 138 P.3d 723 (Ariz. 2006). Fearnow is distinguishable. Fearnow involved a different Ethics Rule, Ariz. S. Ct. R. 42, E.R. 5.6(a), which per se prohibits provisions in law partnership agreements, employment agreements and similar agreements restricting lawyers' practice of law upon the termination of the agreement.

In construing Arizona statutes, we first and foremost must give effect to the legislature's intent, and we must give the statutory language its ordinary meaning unless the statutory context requires otherwise. Mail Boxes, Etc., U.S.A. v. Industrial Comm'n of Ariz., 888 P.2d 777, 779 (Ariz. 1995). Here, based on our contextual reading of Ethics Rule 1.5(d)(3) (including Comment [7] accompanying that Ethics Rule), we are convinced that the purpose of this Ethics Rule is to protect client rights by assuring adequate notice and not to per se

20

prohibit particular attorney conduct. Indeed, per se invalidation of a violative retainer agreement just as easily might hurt the client as help the client. Tellingly, here, it is not the client (Boates) who seeks to invalidate the retainer agreement. Rather, it is an intervening third party (Ulrich) – whom the Ethics Rules were not designed to protect.

Accordingly, we reject Ulrich's claim that the retainer agreement was per se unenforceable under Arizona law.

**CONCLUSION**

For the reasons set forth above, we VACATE the bankruptcy court's judgment dismissing the adversary proceeding, and we REMAND this matter for further proceedings consistent with this decision.

21

**APPENDIX A**

Comment [7] to E.R. 1.5 of the Arizona Rules of Professional Conduct provides in full as follows:

Disclosure of Refund Rights for Certain Prepaid Fees

[7] Advance fee payments are of at least four types. The "true" or "classic" retainer is a fee paid in advance merely to insure the lawyer's availability to represent the client and to preclude the lawyer from taking adverse representation. What is often called a retainer but is in fact merely an advance fee deposit involves a security deposit to insure the payment of fees when they are subsequently earned, either on a flat fee or hourly fee basis. A flat fee is a fee of a set amount for performance of agreed work, which may or may not be paid in advance but is not deemed earned until the work is performed. **A nonrefundable fee or an earned upon receipt fee is a flat fee paid in advance that is deemed earned upon payment regardless of the amount of future work performed. The agreement as to when a fee is earned affects whether it must be placed in the attorney's trust account, see ER 1.15, and may have significance under other laws such as tax and bankruptcy. But the reasonableness requirement and application of the factors in paragraph (a) may mean that a client is entitled to a refund of an advance fee payment even though it has been denominated "nonrefundable," "earned upon receipt" or in similar terms that imply the client would never become entitled to a refund. So that a client is not misled by the use of such terms, paragraph (d)(3) requires certain minimum disclosures that must be included in the written fee agreement.** This does not mean the client will always be entitled to a refund upon early termination of the representation (e.g., factor (a)(2) might justify the entire fee), nor does it determine how any refund should be calculated (e.g., hours worked times a reasonable hourly rate, quantum meruit, percentage of the work completed, etc.), but **merely requires that the client be advised of the possibility of the entitlement to a refund based upon application of the factors set forth in paragraph (a). In order to be able to demonstrate the reasonableness of the fee in the event of early termination of the representation, it would be advisable for lawyers to maintain contemporaneous time records for all representations undertaken on any flat fee basis.**

(Emphasis added.)

22