**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                    )    BAP No.   WW-15-1002-KuJuTa
                                          )
GREGORY S. TIFT,                          )    Bk. No.   14-17966
                                          )
                    Debtor.               )    Adv. No.  14-01432
_____         )
                                          )
GREGORY S. TIFT,                          )
                                          )
                    Appellant,            )
                                          )
v.                                        )    **MEMORANDUM**[*]
                                          )
RESOURCE TRANSITION                       )
CONSULTANTS, LLC; JACK CULLEN;)
SUSAN ALTERMAN,                           )
                                          )
                    Appellees.            )
_____         )

Argued and Submitted on November 17, 2016
at Pasadena, California

Filed – December 9, 2016

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Timothy W. Dore, Bankruptcy Judge, Presiding

Appearances:    Appellant Gregory S. Tift argued pro se; Jack
                Cullen of Foster Pepper PLLC argued for appellees.

Before: KURTZ, JURY and TAYLOR, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**INTRODUCTION**

Former Chapter 13[1] debtor Gregory S. Tift appeals from a summary judgment in favor of appellees Resource Transition Consultants LLC, Jack Cullen and Susan Alterman. In the underlying adversary proceeding, Tift requested damages and injunctive relief for an alleged violation of the automatic stay based on the appellees' continued participation in state court contempt proceedings against Tift, which proceedings partly took place after the commencement of Tift's chapter 13 bankruptcy case.

The bankruptcy court held, as a matter of law, that the automatic stay did not apply to the contempt proceedings against Tift. We agree, so we AFFIRM.

**FACTS**

The dispute between the parties arose in state court, before Tift commenced his bankruptcy case. As part of its efforts to enforce its rights as a secured creditor of Remian LLC, in July 2014, Fannie Mae sought and obtained the appointment of a custodial receiver. The state court appointed the receiver – appellee Resource Transition Consultants – to exercise control over Fannie Mae's collateral: a 16-unit apartment building in Tacoma, Washington.[2] In aid of the receivership, the state court

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the current version of the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]As for the other two appellees, appellee Susan Alterman is Fannie Mae's legal counsel in the state court litigation, and
(continued...)

2

in August 2014 granted Resource Transition Consultants an injunction, which in relevant part enjoined Tift from interfering with the receiver's duties, including the collection of rents from the apartment building's tenants. The injunction also required Tift to produce any and all documents in his possession pertaining to the receivership property.

Tift claimed to be a secured creditor of Remian and, by virtue of his alleged secured creditor status, opposed the appointment of a receiver and later sought to have the receiver removed. In contrast, the receiver asserted that Tift, in essence, was engaged in the unlicensed practice of law. According to the receiver, Tift holds himself and his company out to the community as a professional legal services company and frequently files court papers, negotiates loan workouts and provides other services normally provided by attorneys. The receiver contends that, by way of these services, Tift seeks to delay and impede the creditors of his clients from enforcing their legal rights.

After the issuance of the injunction against Tift and others, the receiver filed against Tift, first, a contempt motion and, later, a sanctions motion. The receiver maintained that Tift had contravened the injunction by interfering with the receiver's duties and by not producing all of the documents that Tift had been ordered to produce. In response, Tift claimed,

[2](...continued)
appellee Jack Cullen, also an attorney, has represented Resource Transition Consultants in both the state court and the bankruptcy court.

among other things, that many of his prior emails pertaining to Remian had been deleted and that he could not produce what he previously deleted.

The state court entered its order finding Tift in contempt on October 3, 2014. The contempt order gave Tift an additional two weeks to comply with the production aspects of the court's injunction. The contempt order further specified that Tift was required to turn over to Resource Transition Consultants all of his computers, along with all password and login information necessary to give Resource Transition Consultants complete access to any and all records relating to Remian. The contempt order also specified that Tift's failure to comply with the injunction would result in the imposition of monetary sanctions, as well as incarceration.

In response to the receiver's sanctions motion, Tift filed a petition with the state court of appeals seeking an emergency stay. That petition was denied on October 30, 2014 – the eve of the hearing on the receiver's sanctions motion. Immediately after the denial of his emergency stay motion, on October 30, 2014, Tift commenced his chapter 13 bankruptcy case.[3]

---

[3]That bankruptcy case was dismissed on December 2, 2014, based on Tift's failure to submit most of the required case commencement documents. Subsequently, the bankruptcy court denied Tift's motion to vacate the case dismissal. Among other things, the court pointed out that Tift had admitted in his schedules that he had over $900,000 in noncontingent, liquidated unsecured debt. This amount of unsecured debt exceeded the chapter 13 debt limits specified in § 109(e), which governs eligibility to be a chapter 13 debtor. Shortly after the bankruptcy court denied Tift's motion to vacate the dismissal of his chapter 13 case, Tift commenced a chapter 7 bankruptcy case
(continued...)

4

The day after Tift commenced his chapter 13 bankruptcy case, the state court proceeded with the hearing on the receiver's sanctions motion. Tift did not appear. The state court and counsel for the receiver – appellee Jack Cullen – discussed the potential applicability of the automatic stay, but Cullen persuaded the state court that the commencement of Tift's bankruptcy case did not stay the contempt proceedings. Based on the inapplicability of the stay and Tift's continuing contempt of court, the state court awarded contempt sanctions of $2,000 per day and also issued a warrant for Tift's arrest.

Meanwhile, in the bankruptcy court, Tift filed his adversary complaint seeking injunctive relief and damages based on the appellees' alleged violation of the automatic stay. According to Tift, the continued prosecution of the state court contempt proceedings, including the October 31, 2014 sanctions hearing, violated the stay and justified the relief requested.

Almost immediately, the appellees responded to the complaint by moving for summary judgment. The appellees argued that the automatic stay did not apply to the contempt proceedings. Tift filed a declaration in response to the summary judgment motion in which he contended that he needed more time to conduct discovery and that there were issues of fact that needed to be decided by the bankruptcy court. But Tift's declaration did not identify these alleged issues of fact.

[3](...continued) (Case No. 14-18931), which was pending at the time the bankruptcy court disposed of Tift's adversary proceeding by granting the appellees' summary judgment motion.

At the hearing on the summary judgment motion, the bankruptcy court ruled in favor of the appellees and against Tift.[4] The bankruptcy court held that the automatic stay did not apply to the state court contempt proceedings. The court also held that Tift did not need additional time to conduct discovery because there were no facts Tift could uncover that would render the contempt proceedings subject to the stay. Because no factual dispute existed and because Ninth Circuit law clearly supported the appellees' position (that the stay did not apply), the bankruptcy court concluded that the appellees were entitled to summary judgment against Tift.

The bankruptcy court entered summary judgment on December 18, 2014, and Tift timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(O), and we have jurisdiction under 28 U.S.C. § 158.

The bankruptcy court's summary judgment ruling raised the issue of whether Tift continued to have standing to pursue his stay violation action in light of the chapter 7 case he filed immediately after his chapter 13 case was dismissed. The court queried whether those claims could be pursued only by Tift's chapter 7 trustee. In any event, Tift's 2014 chapter 7 case was dismissed in early 2015 based on his failure to pay the filing

---

[4]At a prior hearing, the bankruptcy court had denied Tift's request for injunctive relief. The court held that the request for injunctive relief was rendered moot by the dismissal of Tift's chapter 13 case and that Tift had not established a likelihood of success on the merits.

6

fee.  In yet another chapter 7 case, Case No. 16-10530, Tift has claimed an exemption for his damages claims arising from the appellees' alleged violation of the automatic stay.  As a result of his exemption claim, Tift continues to have a direct stake in the damage claims and in the outcome of this appeal.  Thus, Tift has standing.  See Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 822-23 (9th Cir. BAP 2010).

**ISSUE**

Did the bankruptcy court commit reversible error when it granted the appellees' summary judgment motion and resolved all of Tift's claims in their favor?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's grant of summary judgment.  Ulrich v. Schian Walker, P.L.C. (In re Boates), 551 B.R. 428, 433 (9th Cir. BAP 2016) (citing Ilko v. Cal. St. Bd. of Equalization (In re Ilko), 651 F.3d 1049, 1052 (9th Cir. 2011)).

The summary judgment standards are the same for all federal courts.  Id. (citing Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013)).  Summary judgment may be granted when there are no genuine issues of disputed material fact and when the movant is entitled to prevail as a matter of law.  Civil Rule 56 (made applicable in adversary proceedings by Rule 7056); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**DISCUSSION**

Under § 362, the automatic stay arises upon the filing of the debtor's bankruptcy petition.  Among other things, the stay

7

prohibits creditors from continuing to prosecute prepetition litigation against the debtor. § 362(a)(1); see also Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.), 96 F.3d 346, 351 (9th Cir. 1996). The stay also prevents creditors from attempting to collect on prepetition debts, § 362(a)(6), and also halts almost any attempt "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." § 362(a)(3). When creditors violate the automatic stay, an individual debtor harmed by the stay violation can seek contempt sanctions under § 105(a) or can bring an action for damages under § 362(k). See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1189-90 (9th Cir. 2003); Rediger Inves. Servs. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.), 503 B.R. 726, 734-35 (9th Cir. BAP 2013).

Here, the bankruptcy court held that the appellees had not violated the automatic stay by attending and participating at the state court hearing on their motion for contempt sanctions because, according to Ninth Circuit and Bankruptcy Appellate Panel precedent, the automatic stay does not apply to contempt proceedings based on the debtor's failure to comply with discovery orders and to pay related monetary sanctions. The resolution of this appeal, therefore, hinges on the continued validity of the line of Ninth Circuit and Panel decisions recognizing this exception to the automatic stay.

The first case in this line was David v. Hooker, Ltd., 560 F.2d 412, 417–18 (9th Cir. 1977). In Hooker, which predates the 1978 enactment of the Bankruptcy Code, the court of appeals

8

held that a contempt order requiring obedience with prior court orders directing the debtor business entity and its managing agent to answer interrogatories, and directing the managing agent to pay $2,000 in compensatory sanctions for not previously answering the interrogatories, did not contravene the automatic stay then in effect.[5] Id. at 418. The court of appeals in relevant part explained that, so long as the contempt proceedings did not involve the determination of or attempt to collect the creditor's underlying prepetition claim against the debtor and did not involve a mere ploy by the creditor to harass the debtor, the postpetition continuation of the contempt proceedings did not violate the bankruptcy rule 401(a) stay. Id.

The next case in this line was In re Dumas, 19 B.R. at 676. The alleged stay violation in Dumas arose from state court judgment enforcement proceedings, in which the judgment debtor Dumas stipulated that he was in contempt of court for failure to comply with a subpoena. Id. at 676-77. Instead of complying with the subpoena before the sentencing hearing on the contempt,

---

[5]At the time, the automatic stay arose from federal rule of bankruptcy procedure 401(a), which provided:

> The filing of a petition shall operate as a stay of the commencement or continuation of any action against the bankrupt, or the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt other than one not dischargeable under clause (1), (5), (6), or (7) of section 35(a) of this title.

Hooker, 560 F.2d at 415 n.4. The stay provision set forth in bankruptcy rule 401(a) ultimately was subsumed within § 362(a). See Dumas v. Atwood (In re Dumas), 19 B.R. 676, 677 (9th Cir. BAP 1982).

9

Dumas filed a bankruptcy petition and notified the judgment creditor Atwood.  Id. at 677.

In spite of that notification, the state court sentencing hearing went forward, at which Atwood advocated that a contempt sentence be imposed against Dumas.  (The state court initially did impose a sentence of one week in jail, plus a $275 fine, but later vacated that sentence on Dumas's motion.) Id.

Dumas then filed in the bankruptcy court a contempt motion against Atwood and his attorney for violation of the automatic stay.  The bankruptcy court "dismissed" the motion without explaining the grounds for dismissal, and Dumas appealed.  Id. On appeal, this Panel held that Hooker was controlling and that the state court's contempt sentencing did not violate the automatic stay.  Id. at 677-78.  In so holding, Dumas noted that Hooker only had involved a monetary contempt sanction award against the debtor's principal and not against the debtor itself, but Dumas opined that this distinction was immaterial, positing that, notwithstanding the automatic stay, Hooker also would have permitted monetary contempt sanctions against the debtor itself if such sanctions had been awarded: "we perceive no reluctance by the circuit court to have imposed the sanction on the corporation solely because it was the bankrupt."  Id. at 678.

Dumas also acknowledged that Hooker was interpreting the bankruptcy rule 401(a) automatic stay then in effect and not the version of the automatic stay set forth in § 362(a).  Even so, Dumas did not perceive any material distinction between the bankruptcy rule 401(a) automatic stay and the § 362(a) automatic stay: "the present statute and the former rule are essentially

10

similar." Id. at 677.

The third and final case in this line is Yellow Express, LLC v. Dingley (In re Dingley), 514 B.R. 591 (9th Cir. BAP 2014). In Dingley, the debtor Dingley was ordered by the state court to pay roughly $4,000 in compensatory sanctions to the plaintiff Yellow Express based on Dingley's failure to appear for a post judgment debtor's exam. Id. at 593. When Dingley did not pay the sanctions award, Yellow Express requested and obtained an order to show cause why Dingley should not be held in contempt. Id. Before the show cause hearing was held, Dingley commenced his chapter 7 bankruptcy case. Id. Even though Dingley notified Yellow Express of the bankruptcy filing and the automatic stay, Yellow Express advocated in the state court that the automatic stay did not apply to the contempt proceedings, citing Dumas and Hooker. Id. at 593-94. Dingley did not respond to the state court's order requiring briefing on the automatic stay issue. Instead, Dingley filed a motion to enforce the automatic stay. Id.

After considering the parties' positions, the bankruptcy court ruled that the automatic stay prevented the state court and Yellow Express from continuing with contempt proceedings based on Dingley's failure to pay the $4,000 prepetition discovery sanctions award. Id. at 594-95. The bankruptcy court essentially conceded that the automatic stay did not shield Dingley from his willful disobedience of the state court's order. But the bankruptcy court nonetheless concluded that Yellow Express had violated the automatic stay by urging the state court to follow through with the contempt proceedings based on

11

Dingley's nonpayment of a prepetition dischargeable debt (the $4,000 discovery sanctions award). Id.

On appeal, this Panel reversed and held that Hooker had established a bright-line rule excepting contempt proceedings from the automatic stay, so long as the contempt proceeding "'does not involve a determination [or collection] of the ultimate obligation of the bankrupt nor does it represent a ploy by a creditor to harass him.'" Id. at 597 (quoting Hooker, 560 F.2d at 418). The panel recognized that a number of courts have criticized Hooker and Dumas and also noted the "strength of the points" expressed in Judge Jury's separate concurrence, which questioned the continuing validity of Hooker and Dumas. Id. at 599-600. Notwithstanding these concerns, Dingley ultimately held that it was bound by Hooker's bright-line rule "as followed post-Code by Dumas." Id. at 600.

The case currently before us presents little in the way of facts that would permit us to depart from Hooker, Dumas and Dingley. Tift contends that this line of cases is distinguishable because the postpetition state court contempt proceedings against him sought to enforce, in part, a state court order requiring him to turn over his computers to the state court receiver, Resource Transition Consultants. According to Tift, because the state court order interfered with his possession of and control over property of his bankruptcy estate, its enforcement by way of contempt proceedings fell outside the exception to the automatic stay recognized in Hooker, Dumas and Dingley.

At least superficially, Tift's contention might seem to be

supported by Goichman v. Bloom (In re Bloom), 875 F.2d 224 (9th Cir. 1989). Bloom involved a postpetition contempt motion in federal district court arising from the debtor's failure to attend a postjudgment deposition. Bloom also involved the district court's postpetition denial of an exemption claim that Bloom had asserted prepetition in response to the creditor Goichman's garnishment efforts. Id. at 225. At the contempt hearing, the district court imposed a $500 monetary sanction against Bloom and directed Bloom to transfer partnership assets to Goichman to secure Goichman's prepetition judgment. Id.

Bloom then filed a complaint against Goichman for violation of the automatic stay. Id. In response, Goichman filed a motion in the district court asking the district court to withdraw the reference pursuant to 28 U.S.C. § 157(d). Id. Ultimately, Bloom prevailed in his stay enforcement action, and Goichman appealed. Id.

The Ninth Circuit Court of Appeals upheld the bankruptcy court's determination that Goichman's postpetition actions violated the automatic stay. Id. at 226. In so ruling, the Ninth Circuit explained that Goichman's postpetition actions went well beyond the prosecution of a contempt motion against Bloom:

> Goichman's motion, however, was not merely a motion to hold Bloom in contempt. Among other things, Goichman moved to appoint a receiver for Bloom's estate, to order Bloom to comply with the prebankruptcy consent decree, to strike Bloom's claim of exemption, and to order transfer of certain Florida properties to himself. On its face, the motion patently violates the spirit and letter of section 362.

Id. As the Bloom court further noted, Goichman did not even attempt to defend his postpetition efforts to compel compliance

13

with the consent decree, to strike Bloom's exemption claim and to withdraw the reference. Id. Bloom thus concluded that Goichman was not protected by Hooker because "Goichman filed the contempt motion with the purpose of securing assets protected by the stay." Id.

In Dingley, this Panel interpreted Bloom as limiting the scope of Hooker. 514 B.R. at 599. Among other things, we stated in Dingley that Bloom prevented bankruptcy courts from extending Hooker to cover contempt proceedings in which the creditor sought either to enforce the underlying judgment or to obtain a transfer of bankruptcy estate assets. Id. (citing Bloom, 875 F.2d at 226-27).

Nonetheless, the case currently before us is distinguishable from Bloom. Here, the state court's order directing the turnover of Tift's computers was for the patent and limited purpose of allowing the state court receiver – Resource Transition Consultants – to complete its discovery by enabling it to examine the computers' memory for any information or documents concerning Remian LLC or the receivership property. It was not an attempt to secure or otherwise utilize estate assets in the satisfaction of an underlying debt. In short, the facts presented here are far more similar to Dingley and Dumas than they are to Bloom.[6]

The other arguments Tift has attempted to raise on appeal are devoid of merit. For instance, Tift argues on appeal that

---

[6]In fact, the automatic stay likely was inapplicable for a separate and independent reason. Generally, the automatic stay does not prohibit a litigant from seeking (or enforcing) third party discovery against a debtor. See Groner v. Miller (In re Miller), 262 B.R. 499, 503-05 (9th Cir. BAP 2001).

14

the bankruptcy court ignored his emotional distress claim for relief. However, Tift's adversary complaint reflects that all of Tift's claims were based on the appellees' alleged violation of the automatic stay. In light of our ruling upholding the bankruptcy court's determination that, as a matter law, the appellees did not violate the automatic stay, the bankruptcy court correctly resolved all of Tift's adversary claims in the appellees' favor.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's summary judgment in favor of the appellees.